Erin Rose Ronstadt, SBN 028362
Kristin N. Kalani, SBN 030240
Kevin Koelbel, SBN 016599
OBER & PEKAS, PLLC
3030 N. 3rd St., Suite 1230
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
kristin@oberpekas.com
kevin@oberpekdas.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeff J. Hamann, an unmarried man, | **Case No.** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Earthlink Long Term Disability Plan; and Earthlink, a plan administrator, Unum Life Insurance Company of America, (an ERISA Plan fiduciary), | |
| Defendants. | |

For his claims against Defendants Earthlink Long Term Disability Plan (the "LTD Plan"), Earthlink, Inc. the Plan Administrator ("Earthlink"), and Unum Life Insurance Company of America, (an ERISA Plan fiduciary), ("Unum") (collectively "Defendants"), Plaintiff Jeff J. Hamann ("Hamann") alleges:

### JURISDICTION, VENUE, AND PARTIES

1.      This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").

2.      This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

3.      Hamann currently resides in Maricopa County, Arizona and has been a resident of Maricopa County during his employment with Earthlink and subsequent period of disability.

4.      Unum and Earthlink are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

5.      Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

6.      Earthlink adopted a Welfare Benefits Plan (the "WB Plan") for the benefit of its employees to provide certain welfare benefits, including long-term disability ("LTD") benefits provided through the LTD Plan (collectively "the Plans").

7.      The WB Plan and LTD Plan are purported ERISA benefit plans established and maintained by Earthlink for the benefit of its employees.

8.      Earthlink is the Plan Administrator of the Plans and named fiduciary as defined in 29 U.S.C. § 1102(a).

9.      Earthlink has a duty to administer the Plans prudently and in the best interest of the Plan particiapnts and beneficiaries.

10.     Unum insures the LTD Plan benefits under Policy Number 530415.

11.     At all relevant times, Unum administered for Earthlink claims under the LTD Plan, acted on behalf of the LTD Plan, and acted as an agent for Earthlink.

12.     Earthlink employed Hamann from February 1, 1999 to January 10, 2002 as "Supervisor, User Support."

13.     Hamann was a participant and beneficiary of the Plans.

14.     As administrator of LTD benefits, Unum determines whether an employee is eligible to participate in the LTD Plan.

## GENERAL ALLEGATIONS

15.     All other paragraphs are incorporated by reference.

**OBER & PEKAS, PLLC**
3030 N. 3rd St., STe. 1230
Phoenix, AZ 85012
(602) 277-1745

2

16.     Hamann became disabled under the terms of the LTD Plan on January 10, 2002.

17.     Unum paid benefits for two years, from 2002 to 2004 based on its determination that Hamann suffered from a mental nervous disorder.

18.     The LTD Plan limits benefits for mental nervous disorders to 24 months.

19.     The Social Security Administration ("SSA") determined Hamann disabled as of February 2, 2002 due to behavioral health issues.

20.     In August 2005, Hamann submitted a Request to Participate Form so his claim would be reassessed pursuant to a multi-state settlement agreement that required Unum to review claims from 1997 to 2004 to improve procedures for handling claims and strengthen quality control systems.

21.     Unum informed Hamann that it would schedule his claim for reassessment and send him the necessary forms at that time.

22.     In March 2007, Hamann filled out and submitted Reassessment Information Forms.

23.     Unum obtained Hamann's SSA file in May 2007 as part of its reassessment review.

24.     Unum reassessed Hamann's claim in 2007 and paid benefits retroactively from the date of termination of benefits through June 10, 2007 based on comorbid physical conditions.

25.     Unum had its physician, Dr. Wong, review the claim.  The claim file states:

Add'l medical information was obtained on reassessment including [Social Security] records. Since this was a claim that had been paid under the 24 month [Mental and Nervous] limitation, file was referred to medical dept. to determine if impairment was supported for a physical condition beyond 5/9/04 when benefits ended. A medical review was completed by [Medically Credentialed Resource] J. Wong on 7/3/07. She noted that [Hamann] had depression and anxiety and that is why benefits were paid under the [Mental and Nervous] limitation. She also noted that [Hamann] has multiple medical conditions being concurrently evaluated/treated including cardiac arrhythmias, sleep disturbance, pulmonary issues, sarcoidosis, and migraine headaches. A lung biopsy confirmed the presence of pulmonary sarcoidosis; lesions in the spleen also appeared to represent a sarcoid process; [Hamann]'s heart problems were also felt to be related to

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ 85012
(602) 277-1745

3

sarcoid involvement, although a myocardial biopsy was not done to confirm this.  Since 2004, [Hamann] has undergone a considerable number of consultations and treatments for his conditions. J. Wong concluded that although [Hamann]'s conditions do not seem to be impairing individually, **when taken in total**, it does appear that they reasonably could interfere with regular and sustainable functional capacity. J. Wong noted that [Hamann] was awarded [Social Security Disability Income] for his psych conditions and [Social Security] did not address his physical conditions in their award, however, the new information rec'd on reassessment seems to support ongoing conditions that were present at the time of termination of Unum's benefits. Recommendation is to reopen, pay benefits to date and transfer to [Extended Benefits Center] on the basis that there are sustainability issues with [Hamann]'s physical conditions. Benefits will be offset by [Social Security Disability Income] (primary and family) and possible earnings offset as [Hamann] attempted to [return to work] for a short period of time in 2006.

(emphasis added)

26.     The reassessment review was completed by S. Chang, who agreed with Dr. Wong's opinion.

27.     Unum referred Hamann's claim to the Claim Reassessment Unit and the Financial Consulting Team and began paying benefits again.

28.     In 2011, Unum requested updated information from Hamann.

29.     Hamann provided an attending physician statement, which reported: cardiac sarcoidosis, pulmonary sarcoidosis, dyspnea, ventricular tachycardia, weakness, malaise, fatigue, chronic back and shoulder pain.

30.     Unum attempted to contact Hamann's medical treatment providers: Sheila Janisch (Arizona Pain Center),  Dr. Cucher (cardiologist), Dr. Page (Tempe Pain Center), and Dr. Grill (Pulmonary Associates).

31.     In October 2011, Unum obtained a comprehensive background report, including social networks, people at work, and public records.

32.     The report contained nothing of apparent interest.

33.     In January 2012, Unum obtained another comprehensive background report allegedly related to fraud prevention that included: past employment, past residences, people associated with past residences, relatives, motor vehicle registrations, people at work, licenses, social media, internet.

34. The report included no new information and no indicia of fraud.

35. On March 7, 2012, Unum requested updated information from Hamann including multiple releases to obtain records.

36. On April 12, 2012, Unum again requested updated information from Hamann on threat of termination of benefits.

37. In July 2012, Unum obtained a third comprehensive background report.

38. The third report included no indicia of fraud and the only new information was current contact information and "possible criminal records," which Unum noted "to be irrelevant to the insured's LTD file."

39. In November 2012, Unum obtained a fourth comprehensive background report.

40. Like the other reports, it included no indicia of fraud.

41. In December 2012, Unum sent a field investigator to see Hamann.

42. The field investigator was instructed that if Hamann did not sign required forms, benefits would terminate.

43. Hamann understood that the field investigator was being sent to explain the from and address Hamann's ongoing privacy concerns, but the field investigator was unable to address Hamann's concerns about what material information Unum believed it would find and to whom Unum would be authorized to disburse the information.

44. Because Unum would stop benefits if Hamann did not sign the forms, he signed the forms, but did so under duress.

45. The claim file notes that the field investigator suspended his interview of Hamann, upon discovering that Hamann was recording the interview. But that is not true. The video recorder was in plain sight from the outset of the interview and the field investigator knew he was being recorded.

46. The field investigator, in fact, at one point stops the interview to go to the door to retrieve his own recording device.

47. In January 2013, Unum conducted surveillance.

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ 85012
(602) 277-1745

5

48.     The surveillance investigator obtained 1 minute and 21 seconds of video over two days.

49.     On January 31, 2013, the investigator observed an "unidentified male," whose "identity was not positively identified as the claimant."  The surveillance investigator observed the unidentified male as he "stood in the yard area, walked back and forth and then entered the house."  He observed no further activity that day.

50.     As benign as this description of the video is, it is still an exaggeration.  The unidentified male is only observed standing and walking out of view behind bushes.  He is not seen walking "back and forth" or entering a house.

51.     The following day, the surveillance investigator observed a different male carry a television set and walk out of view with the an unidentified male.  He observed no further activity that day.

52.     In February 2013, Unum obtained a fifth comprehensive background report at the request of the special investigation unit.

53.     The report, as the others, included no indicia of fraud.

54.     The April 30, 2013 claim synopsis includes the following:

Claim Overview (a.k.a. synopsis): [Hamann] is currently a 45 [year old] male who worked as a Tech Support for Earthlink. [Hamann] has been out of work since 01/10/2002 due to ventricle tachycardia, lymphoma, circadia rhythm disorder/ Based on [short-term disability] claims, on 1/9/02 [Hamann] had pathologic sleepiness and circadian rhythm disorder due to his shift@ work. [Hamann] was put on psych medication and [claim] was closed as [Hamann] was no longer [totally disabled] own occ[upation]— [Hamann] [returned to work] on 4/8/02. appears that [Hamann] ended his employment on 4/30/02 due to depression and supraventricular tachycardia. Per [office visit notes] [Hamann]'s sleep disorder/depression exacerbated cardiac and pulmonary conditions. [Clinical Consultation] review 9/2004 based on the information reviewed it appears that the information provided reveals that the primary disabling condition seems to be related to Major Depression and Anxiety. Additional information may be valuable in order to establish treatment from 6/02 to 4/03, and from 10/03 forward.

LTD claim closed in 05/2004 due to not meeting requirements of the policy for his physical conditions.

Claim reopened by [Claim Review Unit] – [Clinical Consultant] review 7/2007. The claimant has a number of conditions including sarcoidosis which involves the lungs, spleen and presumably the heart He is also noted to have sleep disturbance from a circadian rhythm disorder, asthma and

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ  85012
(602) 277-1745

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ  85012
(602) 277-1745

possibly fibromyalgia. Although individually the conditions would not necessarily be impairing, in combination they appear to significantly impact his functional abilities. He has an implantable cardiac defibrillator which would discharge if he went into any significant arrhythmia. Due to this and fatigue from his sleep disorder he should not be involved in activities in any hazardous area such as working at heights, working around machinery. etc. Even driving could he hazardous. He is noted to have a reduced election [sic] fraction of 37% and mild obstructive airway disease (with asthma exacerbations) which would preclude him from any heavy work or heavy lifting. These would likely be ongoing. The combination of his conditions would very likely interfere with sustainable functional capacity. Although Social Security did not address his physical conditions in their award, he reasonably was impaired on a psychiatric basis at the beginning of the claim and Unum agreed with that position (and paid the maximum mental & nervous benefit). The new information, however, does seem to support ongoing conditions that were present at the time of termination of Unum's benefits.

55.     The subsequent nurse consultant clinical analysis, completed May 10, 2013 concluded:

Based on the available medical information provided to date there is insufficient information to understand if the insured has experienced any improvement, stability, or decrease in functional capacity.

In regards to a whole person analysis there are multiple conditions mentioned in the file that include Congestive heart failure, Ventricular tachycardia with implanted defibrillator pace maker, Cardiac sarcoidosis, Pulmonary sarcoidosis, Hypertension with symptoms of shortness of breath, fatigue, palpitations, weakness, back and shoulder pain, fibromyalgia and anxiety that individually or collectively remains unclear as to how they impact the insured's functional capacity.

56.     Unum's July 12, 2013 claim file notes state, "We have obtained all the information available to us and are unable to determine the insured's current functional capacity."

57.     On July 12, 2013, Unum wrote to Hamann and addressed his privacy concerns related to the scope of releases Unum asked him to sign, seeking tax records going back six years, and stating that his benefits would be terminated if he did not comply.

58.     Hamann signed and returned the authorizations Unum sought.

59.     Although Hamann had provided authorization for Unum to obtain his tax records, on August 27, 2013, Unum wrote to him and asked him to sign another release, again stating that if he did not sign Unum would terminate his benefits.

60.     Hamann again signed and returned the authorization.

61.     At Unum's request, Hamann provided a Disability Status Update form to Unum in November 2013, which included the following:

- No activities sick in bed get up to eat.  I have help assistance getting to Dr. appointments and Pharmacy.
- Requires assistance to care for himself.
- Has assistance with activities of daily living.
- Takes the following medications:
    - Oxycontin
    - Oxycodone
    - Divalproex
    - Quetiapine
    - Chorzoxazone
    - Atenol
    - Potassium
    - Digoxin
    - Vibrid
    - Fexofenadine
    - Meloxicam
    - Linosopril
    - Zolpidem
    - Fluvoxamine
    - Topriramate
    - Alaprazolom
    - Promethazino
- Has the following treating medical providers:
    - Pain Center of Arizona
    - Phoenix Heart Hospital
    - Sahara Behavioral Health

62.     Unum contacted the Pain Center of Arizona and asked if any restrictions or limitations had been placed on Hamann that would prevent him from returning to work.

63.     The contact at the Pain Center of Arizona explained that it does not place restrictions or limitations on patients and would refer the patient for a functional capacity examination to determine restrictions or limitations.

64.     Unum never asked Hamann to undergo a functional capacity examination to determine his restrictions and limitations.  Nor did Unum inform Hamann that a functional capacity examination may provide evidence to support his claim.

65.     The records of Hamann's office visits at Pain Center of Arizona through February 28, 2014 show that his condition had worsened.  His pain level increased and the duration of the pain increased.  He was still unable to perform most activities of daily

OBER & PEKAS, PLLC
3030 N. 3rd St., STE. 1230
Phoenix, AZ  85012
(602) 277-1745

living.  He was positive for fatigue, nasal congestion, shortness of breath with exertion, wheezing, muscle cramps, joint pain, stiffness, muscle weakness, joint swelling, back pain, muscle aches, headaches, weakness, allergies, and anxiety.  He continued on Oxycodone and oxycotin (both of which prevent him from driving), Zanaflex, and Topamax for pain, and received botox injections for headaches.  His assessed problems included:  chronic migraines, muscle spasm, chronic back pain, hypertension, chronic neck pain, thoracic/lumbosacral neuritis/radiculitis, thoracic spondylosis, long-term use of current medications, cervical spondylosis, myalgia, and myositis.

66.    Unum's June 26, 2014 claim file notes assessing whether Hamann can perform sedentary work concludes, "given [Hamann's] consistent reports of migraine headaches occurring 2-3x per week, as well as his consistent treatment for sure, unclear if sustainability will be an issue."

67.    Unum's July 2, 2014 claim file notes state, "[b]ased on information to date it doesn't appear [Hamann] would be precluded from primarily seated work by any condition other than migraine headaches.  Based on frequency of migraines documented in the most recent [office visit note] **it is possible that the claimant lacks predictable work capacity,** however, this is not entirely clear."  (emphasis added).  Despite the obvious lack of evidence, Unum would terminate benefits just 9 days later.

68.    Unable to find evidence to support the termination of benefits, Unum had its physician, Dr. Bress, review the same evidence.  On July 10, 2014, ignoring Dr. Wong's conclusion that "although [Hamann's]'s conditions do not seem to be impairing individually, when taken in total, it does appear that they reasonably could interfere with regular and sustainable functional capacity," and Hamann's comorbid psychiatric condition that initially led Unum and later the Social Security Administration to conclude Hamann is disabled, Dr. Bress reached the narrow conclusion,  "[t]here is no evidence that [Hamann] lacks the capacity to perform [the demands of his own occ (sedentary)] on a full-time basis based on **physical/organic medical problems**" (emphasis added).

69.     Dr. Bress felt an independent medical examination was unnecessary because Hamann's cardiologist, Dr. Cucher, opined Hamann was capable of full time sedentary work.

70.     Dr. Bress ignored that Dr. Cucher qualified his opinion as being "from a cardiovascular standpoint."  Dr. Bress did not consider, as Dr. Wong did, Hamann's plethora of medical issues and comorbid psychiatric condition.

71.     Dr. Bress has a history of second-guessing treating physicians without conducting his own physical examination, not seeking independent medical examinations that might confirm his diagnosis, and rejecting claims that rely on subjective complaints. *See, e.g., Boles v. Unum Life Ins. Co.,* District of Nebraska case no. 4:11-cv-3031-RGk-CRZ, Dkt.No. 69.

72.     On July 11, 2014, Unum terminated Hamann's benefits (the "Decision").

73.     The Decision to terminate benefits does not explain Unum's rejection of treating physician opinions, rejection of the Social Security Administration's decision, or even rejection of its own physician's (Dr. Wong's) opinion.

74.     The Decision does not explain how the evidence that supported payment of benefits for 10 years no longer supported benefits, and does not cite evidence that Hamann's condition improved.

75.     The Decision to terminate benefits ignores that Dr. Cucher's opinion was limited.  The decision cites the Pain Center of Arizona's lack of restrictions and limitations, ignoring that the Pain Center said it does not impose them, but instead sends patients for functional capacity examinations.  And, the Decision ignores the comorbid psychiatric condition citing the 24-month mental and nervous limitation.

76.     On July 11, 2014, Hamann requested a copy of his benefit decision and the reports of doctors who found him not disabled.

77.     On July 13, 14, and 16, 2014, Hamann contacted Unum and reported that emails Unum sent were blank, and he still did not have the doctors' reports he requested.

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ  85012
(602) 277-1745

10

78.     On July 24, 2014, Unum sent a copy of Hamann's claim file to him, but did not include "privileged communications with our Company's attorneys."

79.     Hamann appealed Unum's decision to terminate his benefits.  (Exhibit 1.)

80.     Unum received his appeal on November 12, 2014.  (*Id.*)

81.     His appeal included a list of 34 current medications, a Disability Status Update describing his condition, and updated Attending Physician Statements from Dr. Reedy, Dr. Purewal, and Dr. Cucher, and report of his most recent hospital visit.  (*Id.*)

82.     The Disability Status Update states:

> Most of the time up to 20 hours a day I am getting bed rest with my head and legs elevated.  I don't really use a computer the light from the monitor makes my migraines worse and I can't do keyboarding due to my arthritis and carpal tunnel.

(*Id.*)

83.     Hamann further explained that he cannot care for himself and needs help with activities of daily living.

> My girlfriend help [sic] me so much.  She does the grocery shoping [sic], cooks all the meals, does dishes Keeps [sic] house clean, takes care of pretty much all of my needs with bathing & hygeine [sic]  She also makes sure I'm awake for and gets me to my doctor appointments & blood draws or I'm having cardiac issues I could get shocked from my AICD or have paralysis.

(*Id.*)

84.     Dr. Reedy's Attending Physician Statement reports chronic bone and muscle pain, weakness, and fatigue, a lung tissue biopsy, and new depression caused by grief.  It lists the following limitations: cannot lift any significant weight, cannot sit for prolonged periods of time, and cannot stand for prolonged periods of time.  Dr. Reedy also notes Hamann sees a psychiatrist for regular counseling and had a recent hospitalization for symptoms of paralysis.  (*Id.*)

85.     Dr. Purewal's Attending Physician Statement elaborated on his prior assessment, explaining that Hamann suffers from major depression, anxiety, mood swings, insomnia, and congestive heart failure.  He also notes Hamann's medical issues that required recent hospitalization.  (*Id.*)

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ  85012
(602) 277-1745

11

86.     Dr. Cucher's Attending Physician Statement states Hamann suffers from dyspnea, palpitations, headache, chronic fatigue, paroxysmal supraventricular tachycardia, and hypertension.  Dr. Cucher reports:

> Due to chronic joint & muscle pain, [patient] needs to be in a reclined position w/ heart elevated (due to [Congestive Heart Failure]) w/ feet elevated.  [Patient] spends most of his time in bed when he is not going to doctor's appt's.  No repetitive, light-duty action such as answering phones or entering data.  I don't recommend stressful situations interacting with angry/displeased customers.
>
> [Patient] recently lost his daughter to a sudden unexpected death.  This exacerbates & worsens his preexisting depression.  This affects his ability to concentrate, complete tasks & cope with stressful work environment.

Finally, Dr. Cucher reports Hamann was hospitalized on September 1, 2014 for elevated blood pressure and symptoms of paralysis.

87.     Two days after receiving Hamann's appeal, Unum ordered a sixth comprehensive background report.

88.     About a week after that, Unum requested additional records from Hamann's treating medical providers.

89.     On December 3, 2014, Unum informed Hamann that it needed additional information: contact information for Dr. Gulati and tax returns from 2007-2013.

90.     On December 23, 2014, Unum informed Hamann that it needed an additional 45 days to make a decision on his appeal because it needed to obtain additional information.  It did not provide and "special circumstances" justifying the need for the extension.

91.     Unum's claim review included records from the following treating medical providers, who had provided services to Hamann over the 12-year history of his disabiltiy:

Karen Wetherell, MD (Internal Medicine)
Janet Tatman, PhD, P.A.-C (Psychology, sleep Medicine)
Amy Ning, MD (Electrophysiology)
Andrew Kaplan, MD (Cardiology)
Thunderbird Samaritan Medical Center
Mike Gomez II, MD (Pulmonary/Sleep Medicine)
Marwan Bahu, MD (Electrophysiology)
Marvin Padnick, MD (Cardiology)
Camilla Mican, MD (Cardiovascular Surgery)
Armando Bencomo, PhD (Psychology)
Joseph Lynch III, MD (Pulmonary Medicine)

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ 85012
(602) 277-1745

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ 85012
(602) 277-1745

St Joseph's Hospital and Medical Center
Fred Cucher, MD (Cardiology)
Alfred Rossum, MD (Cardiology)
Kristine Sellberg, MD (Cardiology)
Jeffery Gitt, DO (Neurology)
Westside Family Practice
Frederick Marciano, MD (Neurosurgery)
Carlos Alvarado-Valdes, MD (Pulmonary/Internal Medicine)
Jeffrey Morgan, DO/Stephanie Hannah, PA-C (Internal Medicine)
Jatin Shah, MD (Neurology)
Brian Page, DO (Pain Management)
Thomas Lenzmeier, MD (Family Medicine)
Eric Peters, MD (Rheumatology)
Nelson Brady, PA-C (Rheumatology)
Balwindar Pawar, MD (Psychiatry)
Marc Brooks, MD (Ophthalmology)
Robert Kearl, MD (Sleep Medicine)
Amarnauth Singh, MD (Cardiology)
David Towns, MD/Todd Turley, MD (Pain Management)
Eric Peters, MD (Rheumatology)
Abram Burgher, MD, et al (Pain Center of Arizona)
Rebecca Reedy, PA-C (Internal Medicine)
Satinder Purewal, MD (Psychiatry)
Simrat Kaur, MD (Internal Medicine)
Rajbir Gulati, MD (Rheumatology)
John C Lincoln Deer Valley Hospital

92.    Unum's "whole person analysis," conducted during the appeal, includes:

Mr. Hamann has multiple medical conditions including:

Bipolar Disorder, depression, anxiety, insomnia, PTSD (post traumatic stress disorder), panic disorder.

Chronic bone/muscle pain, weakness, fatigue, unspecified myalgias/myositis, chronic back pain.

Sarcoidosis affecting the spleen and lungs; possibly also the heart.

Cardiomyopathy, automatic implantable cardiac defibrillator in situ (AICD) /pacemaker, paroxysmal sapraventricular tachycardia, hypertension, palpitations, paroxysmal ventricular tachycardia, congestive heart failure.

In addition, Mr Hamann has diagnoses of circadian rhythm disorder, asthma, migraines, carpal tunnel syndrome and fibromyalgia.

On appeal, Mr Hamann states there is no cure for his disease and he will always be sick and have disabilities.

**Mr Hamann's statement that there is no cure for his disease is supported**. While treatment has improved the status of his sarcoidosis, this disease is not curable.

In addition, **his heart conditions are not curable** and are quite possibly related to sarcoidosis.

13

Ober & Pekas, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ 85012
(602) 277-1745

. . .

Mr Hamann has chronic complaints of neck pain, low back pain, fatigue, weakness, myalgias and myositis.  **He has documented multilevel degenerative disc disease of the cervical spine**, per CT of the spine done 04.21.06 with canal stenosis at C5-6 and C6-7.

. . .

**This is inconsistent with the level of pain complaints reported by the claimant that requires extensive use of narcotic analgesics and monthly pain management sessions.**

. . .

**On 07.24.14, Mr Hamann's pain has escalated and his response to medication is given as "worsened" and "he continues to require moderate high dose opioid pain medications to retain some level of functionality. His pain medications however do result in mild somnolence and as such he is a poor candidate for many jobs . . . he states that his status has been quite stable over the last several years and at quite a low level from an ability perspective.**

. . .

**Mr Hamann has consistent complaints of fatigue.  As workup for fatigue included negative polysomnogram, fatigue could be attributed to fibromyalgia in conjunction with sarcoidosis. He has also been assigned a diagnosis of "circadian rhythm**

. . .

**Mr Hamann has confirmed sarcoidosis** via diagnostic testing done in 2005.  At that time pathology confirmed that bronchoscopy samples were consistent with sarcoidosis, and **CT scan of the abdomen/pelvis found microabscesses in the spleen, while CT of the thorax found diffuse nodular lung infiltrates. Sarcoidosis was also suspected in the heart,** although no myocardial biopsies were taken.

. . .

Finally, Mr Hamann has **significant cardiac disease with conduction disturbances and known diastolic dysfunction**.  At one point, ventricular function was so impaired his ejection fraction was only 27% (09.09.05) and an AICD/pacemaker was implanted.

(emphasis added).

93.     Unum sent the claim file to its physician, Dr. Norris, for review on appeal.

94.     Dr. Norris's evaluation begins with, "I have not interviewed or examined the claimant," notes Hamann's condition has not *worsened,* and concludes that the restrictions and limitations stated by Hamann's treating physicians are not supported.  But,

he offers no explanation for his rejection of the treating physician's opinions.  His evaluation also does not consider the effect of Hamann's comorbid medical conditions or behavioral health issues.

95.     Unum gathered additional evidence during the appeal process, to which Hamann did not have an opportunity to respond.

96.     Although Unum advised Hamann on December 23, 2014 and again on January 22, 2015 that it would make a decision on his appeal not later than February 10, 2015, on February 10, 2015, Unum advised Hamann that it was extending the deadline to March 19, 2015.

97.     Unum's letters did not comport with the notice extension requirement under ERISA, which required an explanation of the "special circumstances" requiring the extension.  *See* 29 C.F.R. § 2560.503-1.  Unum's extension of the appeal deadlines was also in violation of ERISA.

98.     On March 9, 2015, Unum sent out requests for additional evidence.

99.     On March 16, 2015, Unum denied Hamann's appeal of the Decision to terminate his benefits.

100.    Unum's final decision still fails to explain how the evidence that supported Hamann's claim for ten years no longer supported the claim and it does not cite any evidence that shows Hamann's condition had significantly improved.

101.    Unum's decision was based on information that was not part of the administrative record when Unum initially terminated benefits and when Hamann submitted his appeal, entitling him to supplement the administrative record.  For example, Hamann could have asked his treating physicians to respond to the new evidence.  Dr. Cucher, in particular, continues to opine that Hamann has limited work capabilities. (Exhibit 2).

102.    After Unum denied Hamann's appeal, Unum continued to look for additional reasons to support its denial of Hamann's claim.

103.    Hamann requested a copy of his entire claim file on or about April 3, 2015.

15

104.   On April 16, 2015, Unum provided a copy, but again told Hamann it withheld some documents on a claim of attorney/client privilege.

105.   The claim file notes reflect that Unum not only removed attorney/client privileged documents, but also the special investigation unit's records, and medical records belonging to another claimant.

106.   On July 10, 2015, Hamann sent an additional request to Unum for copies of all "relevant" documents as that term is defined in 29 C.F.R. § 2560.503-1(i)(5) and (m)(8) and requested from Earthlink copies of Plan documents.

107.   Unum has not provided all of the relevant documents.

### The LTD Plan

108.   To be eligible for LTD benefits, a participant must satisfy the definition of "Disability," which means Unum determines whether the participant is limited from performing the material and substantial duties of his regular occupation due to sickness and injury; and has a 20% or more loss in indexed monthly earnings due to the same sickness or injury.

109.   After 24 months of payments a participant is disabled when Unum determines that due to the same sickness or injury, he is unable to perform the duties of any gainful occupation for which he is reasonably fitted by education, training, or experience.

110.   Hamann's education included below average to average grades in elementary school and average grades in high school.  He had trouble with a basic math class in college, but did well in two computer classes.  He has no further education or job training.

111.   Unum paid benefits to Hamann for more than ten years based on his physical disability.

112.   Unum has no evidence that Hamann's condition improved.

113.   As the Plan Administrator, Earthlink controlled and managed the operation and administration of the Plan.

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ  85012
(602) 277-1745

114.    Under the terms of the WB Plan, except for matters reserved to the Board of Directors by the WB Plan or that the Board of Directors reserved to itself, the **Plan Administrator has the exclusive and unreviewable right and discretion to: (a) interpret the WB Plan, the summary plan description, and any other writings affecting the establishment or operation of the WB Plan, both as to legal import and as to the application of the provisions of any such documents to the facts of a particular claim for benefits, and to decide all matters arising under the WB Plan, including the right to remedy possible ambiguities, inconsistencies, or omissions; and (b) to make factual findings and decide conclusively all questions regarding any claim for benefits under the WB Plan.** (emphasis added). All determinations of the Plan Administrator or the Board of Directors with respect to any matter relating to the administration of the WB Plan shall be conclusive and binding on all persons.

115.    Under the terms of the WB Plan "Delegation by the Plan Administrator," the Plan Administrator may employ the services of such persons (including an insurance company or HMO provider) as it may deem necessary or desirable in connection with the administration of claims or other operations of the WB Plan. The Plan Administrator may also appoint a Committee consisting of not less than two persons, each of whom shall either be an Employee or Director of the Employer to assist the Plan Administrator either generally or specifically in reviewing claims for eligibility or benefits or otherwise in administering the Plan, subject to the right of the Board of Directors to replace any or all of the members of the Committee, or to eliminate the Committee entirely. The Plan Administrator, the Employer (and any person to whom any duty or power in connection with the operation of the Plan is delegated), may rely upon all tables, valuations, certificates, reports, and opinions furnished by any duly appointed actuary, accountant (including Employees who are actuaries or accountants), consultant, third-party administration service provider, legal counsel, or other specialist, and the Plan Administrator, Employer, or such delegate shall be fully protected in respect to any action

17

taken or permitted in good faith in reliance thereon.  All actions so taken or permitted shall be conclusive and binding as to all parties.

116.    The WB Plan differentiates between claims for eligibility and claims for benefits.  Earthlink delegated the authority to make determinations about eligibility to participate in the LTD Plan to Unum, but reserved to itself the exclusive right to apply the Plan terms to the facts of a particular claim for benefits.

117.    The WB Plan does not provide for the Plan Administrator to delegate any of its fiduciary duties or discretionary authority.

118.    The WB Plan permits the Employer, Earthlink, to amend any component benefit program in its discretion.

119.    The WB Plan, as required by 29 U.S.C. § 1102(b)(3), provides a procedure for amending the WB Plan:

The Employer shall have full power and authority to amend the provisions of the Plan for any reason at any time, either prospectively or retroactively, to such extent and in such manner as the Employer shall deem advisable. The Employer may delegate such power, in whole or in part, to one or more officers or managerial personnel of the Employer.

The Board may delegate to any individual appointed by the Employer the full power and authority to adopt and to provide a certificate evidencing the execution of any amendment to the Plan which satisfies one of the following requirements:

(a) the amendment is designed to clarify any provision of the Plan;

(b) the amendment is designed to bring the Plan into compliance with applicable law; or

(c) the amendment does not have a significant financial impact on the Employer.

An amendment shall become effective, in accordance with its terms, as to all Participants and all other persons having or claiming an interest under the Plan, upon the effective date specified in the instrument evidencing such amendment.  However, no amendment (1) shall increase the duties and liabilities of the Employer or the Plan Administrator without the Plan Administrator's written consent; or (2) shall divert Plan funds or assets (if any) from the exclusive purpose of paying for the benefits provided by the Plan for or on behalf of the Participants and their Eligible Dependents.  **Any such amendment shall be by a written resolution of a majority of the Board of Directors of the Company, and shall become effective as of the date specified in the enabling resolution.**  The Plan Administrator shall notify all covered Participants of any amendment modifying the substantive

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ  85012
(602) 277-1745

18

1

2

3

4

terms of the Plan no later than 60 days after the effective date of an amendment reducing or eliminating benefits under the plan and otherwise no later than 210 days after the close of the Plan Year in which the amendment has been adopted. Such notification shall be in the form of a Summary of Material Modifications (within the meaning of ERISA section I 02(a)(l) and Reg. section 2520.104b-3) unless incorporated in an updated summary plan description (as described in ERISA section 102(b)).

5

6

120.    Earthlink has never provided a Summary of Material Modifications to Hamann.

7

8

9

10

121.    Under the terms of the WB Plan "Eligibility for Participation," if there is any conflict regarding eligibility to participate between the WB Plan and "any governing document for a component benefit program" the governing document of the component benefit program governs.

11

12

122.    The WB Plan does not provide for resolving any other conflicts between the WB Plan and the governing documents or component benefit programs.

13

14

15

123.    Unum acted under a structural conflict of interest in both administering and paying out on claims under the WB Plan. Unum has a history of malice, self-dealing, and parsimonious claims handling.

16

17

18

124.    That Unum was acting to further its own interest to the detriment of Hamann is obvious based on Unum's course of conduct which was designed to find a reason, after ten years of paying benefits, to terminate benefits.

19

20

125.    Earthlink did not delegate unambiguously to Unum discretionary authority to interpret the Plan or make benefit determinations.

21

22

126.    Hamann is entitled to *de novo* review of his claim, because Earthlink did not properly confer discretionary authority to Unum.

23

127.    Hamann's medical conditions never improved and, in fact, have worsened.

24

25

128.    Hamann is totally disabled from any gainful occupation for which he is reasonably fitted by training, education, and experience.

26

129.    Hamann continues to be disabled as defined by the LTD Plan.

27

130.    Hamann should be entitled to LTD benefits until he is 67 years old.

28

131.    Hamann exhausted his administrative remedies under the LTD Plan.

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ 85012
(602) 277-1745

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ 85012
(602) 277-1745

132.   Hamann satisfied all of the jurisdictional prerequisites to filing a claim, and his claim is timely before this Court.

133.   Hamann is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in order to enforce his rights under the Plans.

## COUNT I
### (Recovery of Plan Benefits)
### (Defendants Unum and the LTD Plan)

134.   All other paragraphs are incorporated by reference.

135.   For ten years, Unum paid benefits under the LTD Plan based on Hamann's comorbid medical and psychiatric conditions.

136.   Hamann reasonably expects that his conditions continue to meet the requirements for benefits until retirement age or until he is no longer disabled.

137.   Unum does not dispute that Hamann continues to suffer from the same conditions and there is no cure.

138.   Unum concedes that it lacks any evidence to determine whether Hamann has the functional capacity to sustain full time employment.

139.   Unum terminated benefits in violation of ERISA and the terms of the LTD Plan.

**WHEREFORE**, on all claims, Hamann prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.   All past and future LTD benefits under the terms of the LTD Plan;

B.   Clarifying and determining Hamann's rights to future benefits under the terms of the LTD Plan;

C.   An award of Hamann's attorneys' fees and costs incurred herein;

D.   An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

E.      For such and further relief as the Court deems just, equitable, and reasonable.


Dated this 17th day of March 2017,


                              OBER & PEKAS, PLLC


                              By: *s/ Erin Rose Ronstadt*
                              Erin Rose Ronstadt
                              Attorney for Plaintiff

OBER & PEKAS, PLLC
3030 N. 3rd St., STe. 1230
Phoenix, AZ 85012
(602) 277-1745